**Paula TARDIE, Plaintiff, Appellant,**

**·v.**

**REHABILITATION HOSPITAL OF RHODE ISLAND, et al., Defendants, Appellees.**

**No. 98–1748.**

United States Court of Appeals, First Circuit.

Heard Jan. 5, 1999.

Decided Feb. 24, 1999.

Peter J. Cerilli, with whom Cerilli, McGuirl & Bicki were on brief, for appellant.

James M. Paulson, with whom Jaclyn L. Kugell and Morgan, Brown & Joy were on brief, for appellees.

Before TORRUELLA, Chief Judge, COFFIN, Senior Circuit Judge, and BOUDIN, Circuit Judge.

TORRUELLA, Chief Judge.

This appeal involves an action filed by plaintiff-appellant Paula Tardie against her employer, the Rehabilitation Hospital of Rhode Island ("RHRI"), and its parent organization, the Braintree Hospital Rehabilitation Network ("Braintree") (collectively, "appellees"). Tardie alleges that she was discharged from her position as Director of Human Resources at RHRI due to her dis-

ability and while she was on medical leave. On May 29, 1998, the district court entered summary judgment against Tardie's claims. Tardie appeals, and we affirm.

## BACKGROUND

In January of 1990, Tardie began working as a personnel assistant in the Human Resources Department at Braintree. Tardie subsequently received several promotions, and in late 1993, Tardie was selected by her supervisor, Richard Horne, to establish the Human Resources Department at the newly-formed RHRI. One of Tardie's tasks in setting up the department was drafting the job description of the Director of Human Resources at RHRI. That job description gave a summary of the position and outlined the essential qualifications, requirements, and functions of the position. One of the listed requirements was "ABILITY TO MAINTAIN ASSIGNED WORK HOURS: Has sufficient endurance to perform tasks over long periods of time."

In January of 1994, Tardie was appointed as Director of Human Resources at RHRI. In this position, Tardie earned a salary of approximately $50,000 per year and worked "anywhere from 50 to 70 hours per week." In July of 1994, Tardie began to experience chest pain, shortness of breath, numbness in her arms, and dizziness. Tardie's doctor conducted tests on her heart and found results consistent with a left atrial enlargement. Tardie was then placed on medical leave of absence from July 26 through September 6, 1994. Horne, who was still Tardie's supervisor, called Tardie, and Tardie told him that she believed that working excessive hours was causing the symptoms. Horne offered to return Tardie to her former position at Braintree, and Tardie accepted the offer. Tardie wrote a "thank you" note to Horne, thanking him for all he had done for her, apologizing that she "couldn't do it," and stating that she "gave it [her] best." Tardie testified in her deposition that, by "it," she meant the long hours of the position.

On August 16, 1995, Horne and Tardie met to discuss the status of her employment. Horne stated that there were no available positions at RHRI, but that he would create a part-time position as a recruiter at Braintree if Tardie was interested. Otherwise, Horne offered to assist her in obtaining a severance package from RHRI and finding employment with another company. Rather than resign or allow Horne to create the part-time position, Tardie called Donald Burman, the Chief Executive Officer of RHRI, and told him that she intended to return to RHRI. She stated that she would gradually increase her working hours to a maximum of forty hours per week, but that she could no longer work the extended hours she had been working. Burman agreed and stated that they could work it out. Tardie then called Horne, who told her that he could justify adding a part-time person to assist Tardie and that he would present this idea to Burman.

Horne, Burman and Lisa LaDew, Chief Operating Officer at RHRI, then met to discuss Tardie's situation. Tardie alleges that Horne, Burman and LaDew discussed her medical condition and assumed that she suffered from an enlarged heart. The three individuals decided not to reinstate Tardie as Human Resources Director because they determined that Tardie could not perform the job while working only forty hours per week. Horne called Tardie to inform her of the decision and told her that she needed to discuss the matter with Burman. Burman later explained to Tardie the basis for the decision and offered to put together a severance package for her. A package was later offered, but Tardie refused to accept it.

On November 27, 1996, Tardie filed a complaint against RHRI and Braintree in United States District Court for the District of Rhode Island. Tardie alleged that her discharge violated: (1) the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 791 et seq.; (2) the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq.; (3) the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq.; (4) the Rhode Island Civil Rights of Individuals with Handicaps Act ("RICRIHA"), R.I. Gen. Laws § 42–87–1 et seq.; (5) the Rhode Island Fair Employment Practices Act ("FEPA"), R.I. Gen. Laws § 28–5–1 et seq.; and (6) the Rhode Island Parental and Fami-

ly Medical Leave Act ("PFMLA"), R.I. Gen. Laws § 28–48–1 *et seq.* After the close of discovery, appellees moved for summary judgment on all counts. The district court granted appellees' motion, finding: (1) that Tardie was unable to demonstrate that she suffered from a "disability" or was perceived as suffering from a "disability" under the ADA or Rehabilitation Act, and (2) that Tardie was unable to work fifty to seventy hours per week, which was one of the essential functions of her position. The district court entered judgment against all of Tardie's claims on May 28, 1998, and this timely appeal followed.

## DISCUSSION

Tardie argues that the district court erred in entering summary judgment against her six causes of action. Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the onus is on the nonmoving party to present facts that show a genuine issue for trial. *See Serrano–Cruz v. DFI Puerto Rico, Inc.,* 109 F.3d 23, 25 (1st Cir.1997); *LeBlanc v. Great American Ins. Co.,* 6 F.3d 836, 841–42 (1st Cir. 1993), *cert. denied,* 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(citing Fed.R.Civ.P. 56(e)). "[P]laintiff ... [must] offer[ ] ... 'significant probative evidence tending to support the complaint.'" *Id.* at 256, 106 S.Ct. 2505 (quoting from *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). We review the district court's grant of summary judgment *de novo. See Serrano–Cruz,* 109 F.3d at 25.

## A. The Americans With Disabilities Act

■ To prove her ADA claim, Tardie must establish: (1) that she suffered from a "disability" within the meaning of the ADA; (2) that she was able to perform the essential functions of her job, either with or without reasonable accommodation; and (3) that her employer discharged her in whole or in part because of that disability. *See Feliciano v. State of Rhode Island,* 160 F.3d 780, 784 (1st Cir.1998) (citing *Katz v. City Metal Co., Inc.,* 87 F.3d 26, 30 (1st Cir.1996)). The district court found that it did not need to reach the second or third elements because Tardie could not establish that she had or has a disability as defined by the ADA.

The regulations governing the ADA define "disability" as: (A) having a physical or mental impairment which substantially limits one or more of an individual's major life activities; (B) having a record of such an impairment; or (C) being regarded as having such an impairment. *See* 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g). The district court rejected Tardie's arguments that she had a "disability" under subsections (2)(A) and (2)(C). On appeal, Tardie argues only that she was disabled under subsection (2)(C), or that appellees regarded her as having a substantially limiting impairment. An individual who has an impairment that is not substantially limiting (or has no impairment at all) is nevertheless "disabled" if she is treated by her employer as having an impairment that does substantially limit major life activities. *See* 29 C.F.R. § 1630.2(*l*); *Katz,* 87 F.3d at 32.

Tardie argues that there is ample evidence that appellees regarded her as suffering from an impairment. Tardie claims that appellees demonstrated their perception of her as disabled at the meeting between Horne, Burman, and LaDew. Tardie claims that the decision to discharge her was based upon appellees' misperception that she suffered from a heart condition which rendered her unable to perform her job, either with or without reasonable accommodation.

■ Tardie has clearly demonstrated that appellees regarded her as having an impairment that prevented her from working more

than forty hours per week; Tardie specifically told them as much. The question becomes whether such an impairment is an impairment that "substantially limits" one of Tardie's "major life activities". *See* 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g). As noted by the district court, working is a major life activity, but the perceived impairment is not one that substantially limits the activity of working. The relevant regulation defines "substantially limits," in the context of the activity of working, as:

> significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3). Hence, the fact that appellees may have regarded Tardie as unable to work more than 40 hours per week, and thereby unable to perform her particular job, does not mean that appellees regarded her as being substantially limited in the major life activity of working. "An impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one." *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 723 (2d Cir.1994), *cert. denied*, 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995); *see also McKay v. Toyota Mfg., U.S.A., Inc.*, 110 F.3d 369, 373 (6th Cir.1997) (citing *Heilweil* and finding that the plaintiff's inability to perform repetitive-motion factory work did not restrict her ability to perform either a class of jobs or a broad range of jobs); *Wooten v. Farmland Foods*, 58 F.3d 382, 386 (8th Cir.1995) (citing *Heilweil*). As the district court noted, there are vast employment opportunities available which require only 40–hour work weeks. Without more, we cannot ascribe error to the district court's finding that appellees regarded Tardie as having an impairment that did not substantially limit one or more of her major life activities. Therefore, we affirm the district court's grant of summary judgment against Tardie's ADA claim for failure to demonstrate that she suffered from a disability.

**B. The Rehabilitation Act**

■ Section 504(a) of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability ... be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). In any claim under the Rehabilitation Act, the plaintiff must first establish that she has a disability covered by the Act. *See Leary v. Dalton*, 58 F.3d 748, 752 (1st Cir.1995). As discussed above, Tardie has not raised a genuine issue with regard to whether she has a "disability" under the ADA. "Disability" is defined identically under the ADA and the Rehabilitation Act. *Compare* 42 U.S.C. § 12102(2)(statutory definition of ADA's "disability") *and* 29 C.F.R. § 1630.2(g) (regulatory definition of ADA's "disability") *with* 29 U.S.C. § 705(20) (statutory definition of Rehabilitation Act's "individual with a disability") *and* 29 C.F.R. § 1614.203(a)(1) (regulatory definition of Rehabilitation Act's "individual with handicaps").[1]

While the ADA's definition of "substantially limits" under 29 C.F.R. § 1630.2(j)(3) does not appear to have a counterpart in the Rehabilitation Act or its regulations, Congress has provided that the standards used to determine whether § 504 of the Rehabilitation Act has been violated in a complaint alleging employment discrimination shall be the standards applied to employment discrimination actions under the ADA, *see* 29 U.S.C. § 794(d). Additionally, several courts have held, in the Rehabilitation Act context, that the inability to perform a particular job does not constitute a substantial limitation in the major life activity of working. *See, e.g., Heilweil*, 32 F.3d at 723–24 (collecting cases for the proposition and finding that the plaintiff's inability to work in one particular place did not constitute a disability); *Gupton v. Virginia*, 14 F.3d 203, 205 (4th Cir.) (finding that a plaintiff did not demonstrate that an

---

1. In the 1992 amendments to the Rehabilitation Act, the term "individual with handicaps" was replaced with the term "individual with a disabil- ity." The two terms are defined identically, but the regulations still employ the previous term.

impairment limited her ability to work when she presented only evidence that it prevented her from performing one particular job), *cert. denied,* 513 U.S. 810, 115 S.Ct. 59, 130 L.Ed.2d 17 (1994); *Byrne v. Board of Educ.,* 979 F.2d 560, 565 (7th Cir.1992) (stating that it is well-established that a person's inability to perform a specific job for a specific employer does not substantially limit that person's ability to work); *Welsh v. City of Tulsa,* 977 F.2d 1415, 1417–18 (10th Cir.1992) (holding that an impairment that an employer perceives as limiting an individual's ability to perform only one job is not a handicap under the Rehabilitation Act); *Maulding v. Sullivan,* 961 F.2d 694, 698 (8th Cir.1992)(finding no error in the district court's conclusion that the inability to perform lab work does not substantially limit employment as a whole), *cert. denied,* 507 U.S. 910, 113 S.Ct. 1255, 122 L.Ed.2d 653 (1993). Therefore, the district court properly granted summary judgment against Tardie's Rehabilitation Act claim for the same reason her ADA claim fails: she has not shown that appellees regarded her as having an impairment which substantially limits a major life activity.

## C. The Family and Medical Leave Act

■ Tardie also claims that her termination while she was on medical leave violated the FMLA. An eligible employee who takes leave under the FMLA is entitled to be restored to the same or an equivalent position upon returning from leave. *See* 29 U.S.C. § 2614(a)(1); *Hodgens v. General Dynamics Corp.,* 144 F.3d 151, 159 (1st Cir. 1998) (citing 29 U.S.C. § 2614(a)(1) and 29 C.F.R. § 825.100(c)). However, the regulations promulgated under the FMLA state that "[i]f the employee is unable to perform an essential function of the position because of a physical or mental condition ... the employee has no right to restoration to another position under the FMLA." 29 C.F.R. § 825.214(b). The regulation then goes on to state that the employer in such a situation may have obligations under the ADA. *See id.*

In analyzing Tardie's FMLA claim under § 825.214(b), the district court found: (1) that the position of Human Resources Director at RHRI requires the employee to work fifty to seventy hours per week, and (2) that the ability to work extended hours was an essential function of the position. Because Tardie cannot work more than forty hours per week, the district court found that Tardie could not perform an essential function of the position, and therefore had no right to reinstatement. Tardie raises several arguments challenging this finding.

■ First, Tardie claims that the evidence does not support a finding that an essential function of her job was working more than 40 hours per week. She points to the job description of the Director of Human Resources position—which she wrote—and notes that it does not set forth the ability to work sixty to seventy-hour weeks as an essential function of the position. However, that job description does state that the person holding the position must have "sufficient endurance to perform tasks over long periods of time." Also, Tardie herself testified in her deposition that: (1) dealing with employee issues beyond the hours of 9:00 a.m. to 5:00 p.m. was "part of the job"; (2) she frequently needed to be present at the hospital for at least a portion of all three of the hospital's eight-hour work shifts; (3) the position often required her to return to work after she had gone home for the evening; and (4) she worked "anywhere from 50 to 70 [hours per week] depending on what [she] was doing." The only evidence Tardie offers to support a finding that working extended hours was not an essential function of the position was a payroll check stub that stated that Tardie's salary was based upon a 40–hour week. However, even overlooking the fact that this payroll documentation was created by an outside accounting organization, this evidence does not support Tardie's position. Tardie was a salaried employee who was not required to keep track of the hours she worked. The fact that she was attributed a 40–hour work week for payroll purposes hardly demonstrates that only 40–hour work weeks were required of her in the actual performance of her position.

At oral argument, Tardie's counsel argued that the time spent at a job is not a "function" of the job; it is a capability. Tardie claims that only specific duties can

be "functions" of a position. Tardie attempts to distinguish her position's extended-hours requirement from the essential functions involved in *Feliciano*, 160 F.3d at 785 (lifting patients), and *Laurin v. Providence Hospital, Massachusetts Nurses Assoc.*, 150 F.3d 52, 57 (1st Cir.1998) (working the night shift). Tardie describes lifting patients and working the night shift as "specific duties" and describes the hours worked as a "capability." Tardie cites no authority for this distinction, and we believe it to be mere semantics. It strains credulity to argue that the time of day that the hours are required to be worked can constitute an essential function but that the number of hours required to be worked cannot. At bottom, Tardie offers no evidence that she or anyone else could perform the job in only forty hours per week and offers no evidence to rebut appellees' evidence that the extended-hours requirement is an essential function of the position. Consequently, the district court did not err in finding that working more than 40 hours per week was an essential function of the position.

■ Lastly, Tardie argues that, even if she were unable to perform the essential functions of her job, appellees were still required to offer her the same or equivalent position with reasonable accommodations. Tardie claims that she has at least raised a genuine issue with regard to whether her request to work only a 40–hour week was a reasonable accommodation. We disagree. First of all, it is not at all clear that the concept of "reasonable accommodation" is applicable in the FMLA context. Section 825.214(b) eliminates the obligation to reinstate an employee returning from FMLA leave if that employee is "unable to perform an essential function of the position." 29 C.F.R. 825.214(b). Unlike the ADA, this FMLA regulation omits the qualifying "with or without reasonable accommodation" language. The regulation goes on to state that the employer may have obligations under the ADA,[2] but this reminder does not import the "reasonable accommodation" qualifier into the FMLA context.

Additionally, even if the "reasonable accommodation" language did apply to this exception to the FMLA reinstatement requirement, the accommodation sought by Tardie was unreasonable as a matter of law. Working more than forty hours per week is an essential function of her position. Tardie's request to work only forty hours per week was a request to eliminate this essential function. We have previously held that an employer need not accommodate a disability by foregoing an essential function of the job. *See Feliciano*, 160 F.3d at 785; *Laurin*, 150 F.3d at 56.

In short, the district court did not err in finding: (1) that working more than forty hours per week was an essential function of her position, and (2) that Tardie was unable to perform that essential function. Therefore, 29 C.F.R. § 825.214(b) relieved appellees of the obligation to reinstate Tardie following her FMLA leave, and the district court properly denied Tardie's FMLA claim on this basis.

**D. Tardie's State Law Causes of Action**

Tardie assigns no separate or additional error to the district court in its assessment of her state law claims under RICRIHA, FEPA, and PFMLA. The district court found that those state law claims required the same analysis as that utilized for the corresponding federal statutes already discussed. Tardie does not challenge this determination; rather, she agrees with it. From this, Tardie argues that the genuine issues of material fact that she claims to have identified with regard to her federal claims also serve to foreclose summary judgment on her state law claims. Because we find that no genuine issue exists with regard to Tardie's ADA, Rehabilitation Act, and FMLA claims, we also find that no genuine issue exists with regard to Tardie's state law claims. *See Hodgens*, 144 F.3d at 158 n. 1; *Cook v. Rhode Island Department of Mental Health, Retardation and Hosps.*, 10 F.3d 17, 21 n. 2 (1st Cir.1993). Therefore, the district court did not err in granting summary judgment against those causes of action.

---

**2.** As discussed above, Tardie has not demonstrated an ADA violation because she has failed to

establish the threshold requirement that she was "disabled" under the ADA.

## CONCLUSION

Based on the foregoing, the district court's entry of summary judgment against Tardie's claims is **AFFIRMED**.