USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit
 ____________________
 
No. 98-2052
 
 STEVEN W. LESSARD,
 
 Plaintiff, Appellant,
 
 v.
 
 OSRAM SYLVANIA, INC.,
 
 Defendant, Appellee.
 
 ____________________
 
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT
 
 FOR THE DISTRICT OF NEW HAMPSHIRE
 
 [Hon. Joseph A. DiClerico, Jr., U.S. District Judge]
 
 ____________________
 
 Before
 
 Boudin, Circuit Judge,
 Magill, Senior Circuit Judge,
 and Lynch, Circuit Judge.
 
 ____________________
 
 Joni N. Esperian, with whom Moquin & Daley, P.A. was on brief,
for appellant.
 Steven E. Hengen, with whom John T. Alexander and Ransmeier &
Spellman, P.C. were on brief, for appellee. 
 
 ____________________
 
 May 4, 1999
 ____________________
LYNCH, Circuit Judge. This is a case under the Americans
with Disabilities Act of 1990 ("ADA"), 42 U.S.C. 12101-12213
(West 1995 & Supp. 1998) and 47 U.S.C. 225 (West 1991 & Supp.
1998). Combat in Vietnam left veteran Stephen Lessard with wounds,
including a hand which is visibly scarred, disfigured, and subject
to chronic pain and numbness. Concerns about repetitive motion
injury to this hand led to Lessard's loss of a specific job as a
trainee spot welder in the Mount Department at Osram Sylvania, Inc.
("OSI"), and the company said it had no other available jobs. 
Lessard sued, asserting that he was not disabled, did not need
accommodation, and was fired because OSI believed he was disabled
with respect to the major life activity of working. This, he said,
violated the ADA's prohibition on discrimination based on a
perceived disability. The district court granted summary judgment
to the employer in a well-reasoned opinion. See Lessard v. Osram
Sylvania, Inc., No. 96-309, slip op. at 13 (D.N.H. Aug. 24, 1998). 
Lessard appeals. We affirm.
 I
We review the grant of summary judgment de novo and take
facts and reasonable inferences in the light most favorable to
Lessard. See Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 14
(1st Cir. 1997). 
Lessard is a veteran who suffered several injuries,
including to his left hand, during his service with the United
States Marine Corps in Vietnam. Although the Department of
Veterans' Affairs lists him as partially disabled, Lessard
considers himself fully functional, without need for any
accommodation. While Lessard acknowledges that he suffers from
pain and numbness in his left hand, he argues in essence that he is
not substantially limited by this impairment. Indeed, he has been
steadily employed as a chef since 1991. A desire for a job with
benefits led him to apply to Kelly Services, Inc. ("Kelly"), a
nationwide employment agency. Kelly had a client, OSI, looking for
employees for a particular production line.
OSI operates a commercial lighting manufacturing plant in
Manchester, New Hampshire, including a production line known as the
Mount Department. In late 1994, in response to increased demand,
OSI added a third shift to the Mount Department. Instead of
directly hiring the necessary workers, OSI obtained them through
Kelly. Kelly hired Lessard as a spot welder, and included him in
a class of twenty-six sent to OSI as Mount Department trainees.
Lessard reported to the Manchester facility on December
19, 1994. The plant was on holiday shutdown, staffed only by
employees setting up the third shift and training the new
personnel. Regular Mount Department workers performed the bulk of
this training. Because of the shutdown, neither OSI's doctor nor
its Human Resources staff were at the plant during the events that
followed.
Lessard's first day of training passed without event. On
the following day, Lessard worked in part with OSI trainer Janine
Lanoie. Lanoie noticed Lessard's injured hand and asked him
whether the injuries bothered him. He replied that they did not. 
After the second day, the training adjourned for a week-long
holiday break.
On December 28, 1994, the new trainees returned for their
third day of training. That morning, they attended an ergonomics
workshop, which focused on avoiding repetitive-motion injury. OSI
hoped the class would reduce the rate of such injury among workers
in the Mount Department, which had been higher than in other areas
of the plant. John LaCourse, Ph.D., a professor at the University
of New Hampshire and a consulting ergonomist to OSI, led the
workshop. When the presentation was over, Lessard approached
Professor LaCourse. Lessard pointed out his scarred hand,
explained that he had suffered shrapnel wounds in Vietnam, and said
he was worried about whether the Mount Department job would, in the
long term, affect his hand. LaCourse and Lessard discussed the
situation.
Mark Hopkins, one of the plant's general foremen, was
present during Lessard's conversation with LaCourse. As a result,
Hopkins took Lessard to see Janice Kelley, the company nurse.
Hopkins did not stay during Nurse Kelley's examination.
Lessard showed Nurse Kelley his hand, explained the
source of the wound, and in response to a question said he had pain
all the time in his hand. Nurse Kelley's contemporaneous notes
state that Lessard was concerned about discomfort in his left hand. 
After examining him, Nurse Kelley said, "I don't think you will be
able to do the work here," and "there's no other kind of work for
you." When Lessard asked her why he could not work, she replied,
"because of your hand." Nurse Kelley's notes show that she told
Lessard he was presently unable to do the mount task, that he asked
if there were other jobs, and that she told him to talk to Human
Resources about possible other jobs when they returned after the
plant shutdown.
Nurse Kelley then had a conversation with Hopkins. 
Hopkins decided that Lessard could not work as a mounting employee,
escorted Lessard from the plant, and repossessed his OSI
identification. Lessard did not subsequently return to work at
OSI, contact Human Resources, or apply for another job with OSI. 
Based on Kelly records and testimony by a Kelly employee,
the district court found that "Lessard called Kelly Services to
report that OSI's nurse felt that he should do something other than
mounting. Kelly Services first checked with OSI, then called
Lessard back to let him know that [his] assignment with OSI was
over because OSI had no non-repetitive work." Lessard, slip op. at
3. There is no evidence that any jobs were then open at the plant
outside the Mount Department.
From the twenty-six trainees in Lessard's class, OSI
eventually hired twelve full-time "mount team members." It is not
clear how many workers, if any, continued as temporary employees
assigned to the Mount Department. On January 30, 1995, a month
later, OSI hired an employee for the Production Maintenance
Department at the Manchester plant. This job did not involve
repetitive motion.
On November 6, 1995, Lessard filed a timely complaint
with the Equal Employment Opportunity Commission ("EEOC"), alleging
that OSI had unfairly terminated him because of a perceived
disability protected by the ADA. On April 4, 1996, the EEOC
notified Lessard of his right to sue. On June 13, 1996, Lessard
filed this action, seeking compensatory damages for lost wages and
mental anguish, punitive damages, either reinstatement or future
lost wages, and costs including attorney's fees.
After discovery, the district court granted summary
judgment to OSI. Noting that Lessard proceeded only under a theory
of perceived disability, the court concluded that he failed to
adduce evidence that OSI "believed he was disabled with respect to
the major life activity of working." Lessard, slip op. at 6. 
Lessard attacks this conclusion on several fronts.
 II
Before addressing Lessard's challenges, we note what is
not at issue or decided here. First, we do not reach the issue of
whether Lessard, retained by Kelly to work at OSI, was an
"employee" of OSI; we will assume arguendo that he was. Second, we
honor Lessard's assertion that he is not disabled, and do not
analyze discrimination based on actual disability. Third, Lessard
has disavowed any claim that the ADA required OSI to give him
reasonable accommodation, and we do not examine this issue. 
Fourth, we do not view this case as involving the "direct threat"
language of the ADA, and we do not examine any such claim. Cf.
EEOC v. Amego, 110 F.3d 135, 142-44 (1st Cir. 1997). We take the
case as Lessard has framed it: the question presented is whether
OSI perceived him to be disabled within the meaning of the ADA and
discriminated against him on that account.
The statutory definition of disability contained in the
ADA includes, with respect to an individual:
 (A) a physical or mental impairment that substantially
 limits one or more of the major life activities of
 such individual;
 (B) a record of such an impairment, or;
 (C) being regarded as having such an impairment.
42 U.S.C. 12102(2). It is paragraph (C) of the definition which
is at issue here.
In encompassing the category of perceived disability, the
ADA follows the model adopted in 504 of the Rehabilitation Act of
1973, as amended, 29 U.S.C. 794. The Supreme Court interpreted
the similar prong of 504 in School Board of Nassau County v.
Arline, 480 U.S. 273 (1987). In Arline, a case involving
tuberculosis, the Court found that, by enacting this branch of the
definition of "handicapped individual" under 504:
 Congress acknowledged that society's accumulated myths
 and fears about disability and disease are as
 handicapping as are the physical limitations that flow
 from actual impairment.
Id. at 284-85. This court also acknowledged these Congressional
concerns in Cook v. Rhode Island, 10 F.3d 17, 24 (1st Cir. 1994),
a case under 504 concerning, inter alia, perceptions that morbid
obesity disqualified plaintiff from a broad range of jobs and
several major life activities.
The EEOC, acting under its authority to promulgate
regulations under the ADA, has said:
 (l) Is regarded as having such an impairment means:
 (l) Has a physical or mental impairment that does not
 substantially limit major life activities but is
 treated by a covered entity as constituting such
 limitation;
 (2) Has a physical or mental impairment that
 substantially limits major life activities only as
 a result of the attitudes of others toward such
 impairment; or
 (3) Has none of the impairments defined in paragraph
 (h)(1) or (2) of this section but is treated by a
 covered entity as having a substantially limiting
 impairment.
29 C.F.R. 1630.2 (1998). We consider here only clauses (1) and
(3). Those clauses shift the analysis somewhat, from what people
at OSI may have perceived to how OSI "treated" Lessard's supposed
impairment. We have previously explored the EEOC regulations in
Tardie v. Rehabilitation Hospital, 168 F.3d 538, 541-42 (1st Cir.
1999) and Katz v. City Metal Co., 87 F.3d 26, 31-32 (1st Cir.
1996).
To recover under the ADA for employment discrimination,
Lessard must prove three elements. He must establish that (1) he
suffers from a disability as defined by the ADA (in this instance,
that the employer regarded him as being disabled) but that (2) he
was nevertheless qualified for the job -- that is, able to perform
its essential functions either with or without reasonable
accommodation -- and, finally, that (3) OSI discharged him, in
whole or in part, because of his protected disability. 
See Feliciano v. Rhode Island, 160 F.3d 780, 784 (1st Cir. 1998)
(citing Katz, 87 F.3d at 30). The burden of proof on all three
prongs in this circuit is on plaintiff. See Tardie, 168 F.3d at
541; Katz, 87 F.3d at 30; Cook, 10 F.3d at 22. The district court
examined the first prong, and found that Lessard had failed to
carry his burden. See Lessard, slip op. at 12. Like the district
court, we begin our inquiry with the threshold question: whether
OSI regarded Lessard as disabled under the ADA, thus entitling him
to the statute's protection. See 42 U.S.C. 12102(2)(A), (C).
Under the ADA, not all impairments lead to protection. 
Soileau, 103 F.3d at 14-15. Only those impairments which
substantially limit a major life activity do so. The only major
life activity argued to be involved here is "working." 29 C.F.R.
 1630.2(i). Thus, this case does not involve any other major life
activity, nor does it involve any evidence that Lessard was unable
generally to work. "Working" itself is a somewhat elastic term and
the EEOC has attempted to give it content through regulations. 
As Lessard, creditably, has noted to us, the regulations
draw a distinction between an inability to perform "a class of jobs
or a broad range of jobs," which provides the basis for a
disability finding, and an "inability to perform a single,
particular job," which does not. 29 C.F.R. 1630.2(j)(3)(i). 
"The inability to perform a single, particular job does not
constitute a substantial limitation in the major life activity of
working." Id. The reason for this distinction ties back to the
notion that there is no disability unless the major life activity
of working is impaired. And all of these refinements are in the
service, in this case, of deciding whether OSI treated Lessard as
it did because of a perceived disability. 
In the end, through the various iterations of Lessard's
arguments, this case turns on the distinction drawn above. The
district court found it undisputed that the Mount Department job --
from which Lessard was sent home -- was a single, specific job, and
so entered summary judgment. Lessard responds that the evidence
more fairly supports the inference that OSI acted as it did not
because it thought him unable to do not merely the Mount Department
job, but a "class of jobs or broad range of jobs," i.e., all
repetitive motion jobs anywhere.
Under the regulations relied on by Lessard, an employee
is substantially limited as to working if he is "significantly
restricted in the ability to perform either a class of jobs or a
broad range of jobs in various classes as compared to the average
person having comparable training, skills and abilities." Id.; see
also Quint v. A.E. Staley Mfg. Co., Nos. 98-1300 & 98-1342, slip
op. at 16, 1999 WL 126785 at *6 (1st Cir. Mar. 15, 1999).
There is no real disagreement between the parties that
the Mount Department job is a narrow, single job. Thus, if OSI
concluded that Lessard was unable to perform the Mount Department
job and treated him accordingly, its actions may not be attacked
under the ADA. That is because only one job or a narrow range of
jobs is involved, and therefore there can be no impairment of the
major life activity of working.
In this interpretation of the regulation, we follow this
court's recent decision in Tardie, affirming summary judgment for
an employer on a perceived disability claim. Tardie held:
 [T]he fact that appellees may have regarded Tardie as
 unable to work more than 40 hours per week, and thereby
 unable to perform her particular job, does not mean that
 appellees regarded her as being substantially limited in
 the major life activity of working. "An impairment that
 disqualifies a person from only a narrow range of jobs is
 not considered a substantially limiting one."
Tardie, 168 F.3d at 542 (quoting Heilweil v. Mount Sinai Hosp., 32
F.3d 718, 723 (2d Cir. 1994)).
Lessard insists that it can be reasonably inferred from
the evidence that OSI found him unable to perform any repetitive
motion work. He further argues that repetitive motion work
includes a broad range of jobs. Thus, Lessard concludes, OSI's
decision to terminate him did involve the major life activity of
working and so was actionable. We think such inferences are not
reasonable given the undisputed record, in particular the facts
that the only OSI jobs available at the time were the Mount
Department jobs, that OSI went to Kelly to fill Mount Department
jobs, that Kelly retained Lessard to fill a Mount Department job,
that Lessard's questions to the safety counselor and the nurse went
to the safety of the Mount Department job for his hand, that the
only job Lessard performed was the Mount Department job, that it
was the Mount Department job from which he was sent home, and that
Lessard reported to Kelly that the nurse told him he should do
something other than mounting. Cf. DM Research, Inc. v. College of
American Pathologists, No. 98-1555, slip op. at 8-9, 1999 WL 104446
at *4 (1st Cir. Mar. 4, 1999) (inferences plaintiff sought to have
drawn were not reasonable). It is true that the Mount Department
work involved repetitive motion; but this does not mean that OSI
treated Lessard as unable to perform a broad range of jobs when it
treated him as unable to perform the specific Mount Department job.
The district court correctly concluded that the evidence
presented was that the various OSI witnesses regarded Lessard as
unsuitable for the Mount Department job, which is a specific job
and not a class of jobs. There is also no evidence that at the
time OSI needed workers outside the Mount Department. Because
Lessard's evidence did not show that his ability to work in
anything other than a specific job was ever questioned by OSI,
summary judgment was appropriately entered against him on the basis
of his failure to show perceived disability. 
Lessard appears to argue that OSI considered him unable
to do other repetitive motion production line jobs within the
plant, but submits no evidence that there were such jobs or that
any such jobs had openings at the time. Lessard bore the burden of
proof. Even if OSI regarded Lessard as precluded from other
repetitive motion production line work within OSI but outside the
Mount Department (if such work existed), it is questionable whether
this will be enough to show a substantially limiting impairment, a
question we do not reach. Cf. McKay v. Toyota Motor Mfg., U.S.A.,
Inc., 110 F.3d 369, 373 (6th Cir.), mot. for untimely cert. denied,
118 S. Ct. 39 (1997); Wooten v. Farmland Foods, 58 F.3d 382, 386
(8th Cir. 1995).
Lessard attempts to avoid this conclusion by saying the
employer regarded him as unsuitable for any work anywhere involving
repetitive hand motions, including jobs such as cooking and
painting. The evidence does not support such an inference, and
thus we do not examine whether such a belief involves a broad class
of jobs, and thus a belief that the major life activity of working
is impaired. See DePaoli v. Abbott Labs., 140 F.3d 668, 672-74
(7th Cir. 1998). It suffices to observe that these can be very
fact-driven inquiries; that the EEOC has defined certain categories
of information as helpful to defining what are "broad classes" of
jobs, 29 C.F.R. 1630.2(j)(3)(ii); see also Quint, slip op. at 16,
1999 WL 126785 at *6, and that this record is devoid of any such
evidence.
Lessard's final argument is that OSI was motivated by
stereotyping, the very evil Congress intended the ADA to prevent. 
Cf. 29 C.F.R. 1630.2(l)(2). He points to his scarred hand,
saying it led to unwarranted assumptions by OSI that he was injury-
prone and would thus drive up insurance costs. We are doubtful,
despite suggestions to the contrary in some commentary, see, e.g.,
R.L. Burgdorf, Jr., Disability Discrimination in Employment Law
162-63 (1996), that even myth-motivated actions by the employer can
be the basis for liability if the actions are based on a perceived
impairment that does not substantially limit a major life activity. 
Lessard's argument thus may well be beside the mark. To put it
differently, on the claims raised by these facts, there is no
reason to think that Congress intended the scope of protection
afforded against perceived disability discrimination to be larger
than the scope of protection afforded against actual disability
discrimination. The EEOC regulations treat the scope of protection
as no greater; if an impairment is not a disability for actual
disability purposes, it is also not a disability for perceived
disability purposes. See 29 C.F.R. 1630.2(i). 
But Lessard's argument, in any event, is not reasonably
supported by inferences from the evidence. OSI and those who
trained Lessard were well aware of his scarred hand and it mattered
not, at least not until he raised his own fears that the mounting
job might harm his hand. It was not stereotyping which set the
chain of events in motion. And because a deeply offended Lessard
never contacted the OSI Human Resources Department about a broader
range of jobs, at the time of his dismissal or later, the record is
barren as to how OSI would have responded. Regrettably, further
communication by either side -- which might have avoided this
lawsuit -- did not take place.
Affirmed.