**Rex KEPHART, Plaintiff,**

v.

**CHEROKEE COUNTY, NORTH CAROLINA; Rick Honeycutt, in his individual and official capacities as County Manager; Charles Laney, in his individual and official capacities as former County Commissioner; Eugene Morrow, in his individual and official capacities as County Commissioner; and George Postell, in his individual and official capacities as County Commissioner, Defendants.**

No. 2:98CV94.

United States District Court,
W.D. North Carolina,
Bryson City Division.

May 12, 1999.

608

Paul Lewis Bidwell, Asheville, NC, Matthew C. Billips, Zimring, Smith & Billips, Atlanta, GA, for plaintiff.

James B. Spears, Jr., Thomas A. Bright, Haynsworth, Baldwin, Johnson & Greaves, Charlotte, NC, for defendants.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the Defendants' supplement to their motion for summary judgment filed in accordance with the Memorandum and Order of April 23, 1999. The Plaintiff filed an untimely response which has not been considered.

As noted in the prior Order, two days after learning that his job had been divided into two positions, Plaintiff notified the Defendants he needed a 30–day medical leave which was granted. Near the end of that leave, Plaintiff's physician opined he should remain out of work for another 90 days. Plaintiff acknowledges that the tax bills for Cherokee County were due to be mailed during the time when he sought an extended leave. On August 21, 1996, the County denied the Plaintiff's request for a 90–day sick leave, noting that the request lacked a diagnosis, treatment plan and statement of physical restrictions. In addition, it was noted that certain functions of his job, such as preparing and mailing the tax bills, required immediate attention. As a result, Plaintiff went back to work on August 26, 1996; and in an attempt to avoid stressful situations, he came in early and left in the early afternoon. Plaintiff acknowledged, however, that in the past his job had required a work week in excess of 60 hours. On September 17, 1996, Defendant Honeycutt notified Plaintiff that he must be in the office during business hours in order to properly supervise his employees.

Three days later, Plaintiff asserted his rights under the Family Medical Leave Act (FMLA, 29 U.S.C. §§ 2612, *et. seq.*). The County placed Plaintiff on sick leave and notified him in writing that the County considered his position to be a key employee position. The notice warned Plaintiff that as a key employee, he might not be restored to his position due to substantial and grievous economic injury to the County. Attached to the notice were copies of regulations promulgated under the FMLA, including the definitions for key employee and substantial and grievous economic injury. On December 18, 1996, Plaintiff wrote requesting reinstatement; however, he requested reinstatement to his old position of Tax Administrator which had been abolished. He was notified that the position of Tax Assessor had been filled and the County had no position as Tax Administrator.

In response to the Order, the Defendant provided evidence showing that Plaintiff was a salaried employee and among the highest paid ten percent of all employees employed by the Defendant County. In fact, the county manager testified at his deposition that he made the determination from payroll documents prior to notifying the Plaintiff of the County's decision. **Deposition of Richard Lee Honeycutt, at 103.**

Under the FMLA, an eligible employee may take up to twelve weeks of unpaid leave in any twelve month period for specified medical reasons. On return from such leave, an employee is entitled to be restored to his position, or an equivalent one, unless denial is necessary to prevent substantial and grievous economic injury to the employer's operations and the employee is a "key employee." 29 U.S.C. § 2614(b). The statute defines a "key employee" as a "salaried eligible employee who is among the highest paid 10 percent of the employees employed by the employer. . . ." 29 U.S.C. § 2614(b)(2). The statute also requires the employer to provide notice to the employee that restoration will be denied at such time as it determines economic injury will occur. 29 U.S.C. § 2614(b)(1)(B).

It must first be noted that the record is devoid of any certification that the Plaintiff was in fact able to return to work at the time he sought reinstatement. About six weeks prior to his anticipated return date, Plaintiff wrote to his doctor complaining of inability to walk and lower back pain. **Exhibit D *attached to* Plaintiff's Consolidated Response to Defendants' Motion for Summary Judgment (identified therein as Defendant's Deposition Exhibit 45).** It seems obvious that an individual who could not walk would be unable to work in excess of 60 hours per week. *See, e.g., Tardie v. Rehabilitation Hosp. of Rhode Island,* 168 F.3d 538, 543 (1st Cir. 1999).

On September 24, 1996, the Plaintiff received notice from the County that it had determined he was a key employee and that restoration would result in substantial and grievous economic injury. This is exactly what was required under the statute. However, Plaintiff argues that the regulation required the County to determine such injury would occur at the time restoration was sought. The applicable regulation provides:

(a) In order to deny restoration to a key employee, an employer must determine that the restoration of the employee to employment will cause "substantial and grievous economic injury" to the operations of the employer, not whether the absence of the employee will cause such substantial and grievous injury.

(b) An employer may take into account its ability to replace on a temporary basis (or temporarily do without) the employee on FMLA leave. If permanent replacement is unavoidable, the cost of then reinstating the employee can be considered in evaluating whether substantial and grievous economic injury will occur from restoration; in other words, the effect on the operations of the company of reinstating the employee in an equivalent position.

(c) A precise test cannot be set for the level of hardship or injury to the employer which must be sustained. If the reinstatement of a "key employee" threatens the economic viability of the firm, that would constitute "substantial and grievous economic injury." A lesser injury which causes substantial, long-term economic injury would also be sufficient. Minor inconveniences and costs that the employer would experience in the normal course of doing business would certainly not constitute "substantial and grievous economic injury."

(d) FMLA's "substantial and grievous economic injury" standard is different from and more stringent than the "undue hardship" test under the ADA.

29 C.F.R. § 825.218. The Court has been unable to find any case interpreting the regulation or the statute pursuant to which it was promulgated. The regulation obviously seeks to impose a different test than that contained within the statute because it requires a determination at the time restoration is sought that reinstatement would have a economic impact. The statute, on the other hand, requires the employer to provide notice of such injury as soon as such a determination has been made. As a result, both standards will be considered.

■■■ Plaintiff noted the difficulties of operating the tax office in a memorandum written one day prior to requesting a 90-day leave. At that time, he reminded the county manager and commissioners of the due date for mailing tax notices, difficulties caused by COTT's reappraisals which would unduly complicate preparation of the notices and his understaffed office. **Plaintiff's Exhibit D, *supra* (identified therein as Defendant's Deposition Exhibit 40).** Nonetheless, Plaintiff argues that the County should have hired an assistant assessor instead of replacing him. This argument is tantamount to requiring the County to make a "reasonable accommodation" during Plaintiff's FMLA leave, something which the Act does not require. *Tardie,* 168 F.3d at 544. Additionally, even if such were required, the accommodation sought by the Plaintiff "was unrea-

sonable as a matter of law" for the reasons set forth below. *Id.*

Plaintiff also argues that the County has failed to show economic injury because it could have simply hired an assistant assessor for that time period during which the Plaintiff was on leave. In fact, he claims the local State Revenue Officer Stan Duncan so advised the County. That officer's deposition testimony, however, does not support this allegation. Duncan actually testified that he may have had a conversation with the county manager concerning an assistant assessor but could not recall. However, he said many counties actually have such positions *in addition* to that of the assessor which has become increasingly an administrative position. **Deposition of Stan Duncan, at 101–03.** He also testified that the public always balks at the hiring of additional employees in the tax assessors' office. *Id., at 104.* Cherokee County did not have an assistant assessor at the time in question; and while the Plaintiff was on FMLA leave, the County was obligated to continue making his salary and benefits payments.

 Plaintiff also claims the County has failed to produce any evidence that economic injury was considered prior to advising the Plaintiff he might not be eligible for reinstatement. Honeycutt, the county manager, testified that while the Plaintiff was on leave, it was necessary to get the tax bills out or the County would suffer a loss of revenue. **Honeycutt Deposition, at 77.** It was his recollection that the County could not use a temporary assistant but was required to appoint an interim assessor which would have required a longer term than the Plaintiff's medical leave. *Id.* When the Plaintiff advised them he wanted to return to work, Honeycutt testified he considered the economic impact of the fact that there was no money budgeted for an additional position. *Id., at 79.*

Eugene Morrow, a member of the Board of Commissioners, testified that the Board determined the Plaintiff was a key employ-ee because in order to get the tax bills out, the assessor's position had to be filled. **Deposition of Eugene Morrow, at 22.** It was also his understanding that by statute, once the position was filled, the appointment was for the remainder of the unexpired term. *Id.* Therefore, they could not use a temporary assessor. Unless the tax bills went out, the County would have been in "deep financial trouble." *Id., at 27.*

Ronnie Lindsay was the county attorney at the time and recalls a conversation with the county manager about whether Plaintiff was a key employee. **Deposition of Ronnie Scott Lindsay, at 10.** He and Honeycutt determined that Plaintiff was a key employee. *Id.* In making that determination, they discussed the Plaintiff's position, his salary, the economic harm to the County if he were absent, and the remedies the County would have to take in order to get the tax bills out after the revaluation. *Id., at 12.* The revaluation complicated the tax bills for that particular year. He also was of the opinion that the County was required by statute to have a supervising tax assessor, not one on leave. *Id.* After a revaluation, an assessor was responsible for identifying and assessing a value to every parcel of property in the County, preparing and mailing tax bills, and delivering the assessment information to the tax collector. *Id., at 13.* After a revaluation, taxpayers might have numerous complaints which the assessor was ultimately required to resolve. *Id., at 14.* The County had a very limited budget; and if it had hired a temporary assistant assessor, that would have involved hiring for an unbudgeted position while the County was still obligated to pay the Plaintiff. *Id., at 19.* Likewise, if it reinstated the Plaintiff to a substantially equivalent position, this also would have required the expenditure of funds which had not been budgeted. *Id., at 23.*

 Although no case law has yet defined "substantial and grievous economic injury," the Court finds the facts of this

situation fit into the definition as a matter of law. The regulation defines the phrase as follows: "If the reinstatement of a 'key employee' threatens the economic viability of the [County], that would constitute 'substantial and grievous economic injury.' A lesser injury which causes substantial, long-term economic injury would also be sufficient." 29 C.F.R. § 825.218(c). Requiring a county operating on a limited budget to create a position for the Plaintiff would clearly have caused substantial and long-term economic injury. The record is replete with problems encountered by the County during the revaluation process. At the completion of the revaluation, it was the County Assessor who had the ultimate responsibility for setting the final property values and issuing tax bills based on these new valuations. Indeed, the Plaintiff could not have chosen, had he done so, a more inconvenient time for medical leave. And, because he did not delegate responsibility well, his absence became all the more problematic. Considering the financial resources available, the nature and cost of reinstatement and the circumstances of the County, the Court finds as a matter of law that the Defendant has met the "more stringent" standard required under the FMLA. *See, e.g., Lamb v. John Umstead Hosp.,* 19 F.Supp.2d 498, 507 n. 5 (E.D.N.C.1998). The facts set forth herein show that the County, both at the time of its determination that the Plaintiff was key employee and at the time he requested reinstatement, considered the economic impact of his position. Because the Plaintiff has failed to show the County improperly designated him a key employee, he has failed to raise a genuine issue of material fact concerning his claim under the FMLA. *Cehrs v. Northeast Ohio Alzheimer's Research Center,* 155 F.3d 775, 785 (6th Cir.1998) .

**IT IS, THEREFORE, ORDERED** that the Defendant's motion for summary judgment on the claim pursuant to the FMLA is hereby **GRANTED.** A Judgment dismissing this matter in its entirety is filed herewith.