Steven W. LESSARD, Plaintiff,
Appellant,

v.

OSRAM SYLVANIA, INC.,
Defendant, Appellee.

No. 98–2052.

United States Court of Appeals,
First Circuit.

Heard March 4, 1999.

Decided May 4, 1999.

Joni N. Esperian, with whom Moquin &
Daley, P.A. was on brief, for appellant.

Steven E. Hengen, with whom John T. Alexander and Ransmeier & Spellman, P.C. were on brief, for appellee.

Before BOUDIN, Circuit Judge, MAGILL, Senior Circuit Judge,* and LYNCH, Circuit Judge.

LYNCH, Circuit Judge.

This is a case under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213 (West 1995 & Supp.1998) and 47 U.S.C. § 225 (West 1991 & Supp. 1998). Combat in Vietnam left veteran Stephen Lessard with wounds, including a hand which is visibly scarred, disfigured, and subject to chronic pain and numbness. Concerns about repetitive motion injury to this hand led to Lessard's loss of a specific job as a trainee spot welder in the Mount Department at Osram Sylvania, Inc. ("OSI"), and the company said it had no other available jobs. Lessard sued, asserting that he was not disabled, did not need accommodation, and was fired because OSI believed he was disabled with respect to the major life activity of working. This, he said, violated the ADA's prohibition on discrimination based on a *perceived* disability. The district court granted summary judgment to the employer in a well-reasoned opinion. *See Lessard v. Osram Sylvania, Inc.*, No. 96–309, slip op. at 13 (D.N.H. Aug. 24, 1998). Lessard appeals. We affirm.

## I

We review the grant of summary judgment *de novo* and take facts and reasonable inferences in the light most favorable to Lessard. *See Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 14 (1st Cir.1997).

Lessard is a veteran who suffered several injuries, including to his left hand, during his service with the United States Marine Corps in Vietnam. Although the Department of Veterans' Affairs lists him as partially disabled, Lessard considers himself fully functional, without need for

any accommodation. While Lessard acknowledges that he suffers from pain and numbness in his left hand, he argues in essence that he is not substantially limited by this impairment. Indeed, he has been steadily employed as a chef since 1991. A desire for a job with benefits led him to apply to Kelly Services, Inc. ("Kelly"), a nationwide employment agency. Kelly had a client, OSI, looking for employees for a particular production line.

OSI operates a commercial lighting manufacturing plant in Manchester, New Hampshire, including a production line known as the Mount Department. In late 1994, in response to increased demand, OSI added a third shift to the Mount Department. Instead of directly hiring the necessary workers, OSI obtained them through Kelly. Kelly hired Lessard as a spot welder, and included him in a class of twenty-six sent to OSI as Mount Department trainees.

Lessard reported to the Manchester facility on December 19, 1994. The plant was on holiday shutdown, staffed only by employees setting up the third shift and training the new personnel. Regular Mount Department workers performed the bulk of this training. Because of the shutdown, neither OSI's doctor nor its Human Resources staff were at the plant during the events that followed.

Lessard's first day of training passed without event. On the following day, Lessard worked in part with OSI trainer Janine Lanoie. Lanoie noticed Lessard's injured hand and asked him whether the injuries bothered him. He replied that they did not. After the second day, the training adjourned for a week-long holiday break.

On December 28, 1994, the new trainees returned for their third day of training. That morning, they attended an ergonomics workshop, which focused on avoiding repetitive-motion injury. OSI hoped the

* Of the Eighth Circuit, sitting by designation.

class would reduce the rate of such injury among workers in the Mount Department, which had been higher than in other areas of the plant. John LaCourse, Ph.D., a professor at the University of New Hampshire and a consulting ergonomist to OSI, led the workshop. When the presentation was over, Lessard approached Professor LaCourse. Lessard pointed out his scarred hand, explained that he had suffered shrapnel wounds in Vietnam, and said he was worried about whether the Mount Department job would, in the long term, affect his hand. LaCourse and Lessard discussed the situation.[1]

Mark Hopkins, one of the plant's general foremen, was present during Lessard's conversation with LaCourse. As a result, Hopkins took Lessard to see Janice Kelley, the company nurse. Hopkins did not stay during Nurse Kelley's examination.

Lessard showed Nurse Kelley his hand, explained the source of the wound, and in response to a question said he had pain all the time in his hand. Nurse Kelley's contemporaneous notes state that Lessard was concerned about discomfort in his left hand. After examining him, Nurse Kelley said, "I don't think you will be able to do the work here," and "there's no other kind of work for you." When Lessard asked her why he could not work, she replied, "because of your hand." Nurse Kelley's notes show that she told Lessard he was presently unable to do the mount task, that he asked if there were other jobs, and that she told him to talk to Human Resources about possible other jobs when they returned after the plant shutdown.

Nurse Kelley then had a conversation with Hopkins. Hopkins decided that Lessard could not work as a mounting employee, escorted Lessard from the plant, and repossessed his OSI identification. Lessard did not subsequently return to work at OSI, contact Human Resources, or apply for another job with OSI.

Based on Kelly records and testimony by a Kelly employee, the district court found that "Lessard called Kelly Services to report that OSI's nurse felt that he should do something other than mounting. Kelly Services first checked with OSI, then called Lessard back to let him know that [his] assignment with OSI was over because OSI had no non-repetitive work." *Lessard,* slip op. at 3. There is no evidence that any jobs were then open at the plant outside the Mount Department.

From the twenty-six trainees in Lessard's class, OSI eventually hired twelve full-time "mount team members." It is not clear how many workers, if any, continued as temporary employees assigned to the Mount Department. On January 30, 1995, a month later, OSI hired an employee for the Production Maintenance Department at the Manchester plant. This job did not involve repetitive motion.

On November 6, 1995, Lessard filed a timely complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that OSI had unfairly terminated him because of a perceived disability protected by the ADA.[2] On April 4, 1996, the EEOC notified Lessard of his right to sue. On June 13, 1996, Lessard filed this action, seeking compensatory damages for lost wages and mental anguish,[3] punitive dam-

---

1. Lessard and LaCourse have different recollections of their conversation. According to Lessard, LaCourse said not to worry about the hand. LaCourse remembers telling Lessard that "the mounting line has forceful exertions [and] awkward postures," and that, although he was not a physician, it seemed to him that Lessard's previous injury would increase his chance of developing a musculoskeletal disorder from working in the Mount Department. Because neither of these accounts affects our resolution of this appeal, we need not choose between them.

2. Lessard also filed a complaint with the Department of Labor under 38 U.S.C. § 4212 (West 1991 & Supp.1998) (requiring government contractors to take affirmative action, inter alia, to employ veterans of the Vietnam era). That complaint forms no part of this appeal.

3. In answer to an interrogatory, Lessard averred that he is "extremely angry and disgusted that I was fired for having an injured hand.... I served my country and risked my life. [OSI] had no right to fire me for my

ages, either reinstatement or future lost wages, and costs including attorney's fees.

After discovery, the district court granted summary judgment to OSI. Noting that Lessard proceeded only under a theory of perceived disability, the court concluded that he failed to adduce evidence that OSI "believed he was disabled with respect to the major life activity of working." *Lessard*, slip op. at 6. Lessard attacks this conclusion on several fronts.

## II

Before addressing Lessard's challenges, we note what is not at issue or decided here. First, we do not reach the issue of whether Lessard, retained by Kelly to work at OSI, was an "employee" of OSI; we will assume arguendo that he was. Second, we honor Lessard's assertion that he is not disabled, and do not analyze discrimination based on actual disability. Third, Lessard has disavowed any claim that the ADA required OSI to give him reasonable accommodation, and we do not examine this issue. Fourth, we do not view this case as involving the "direct threat" language of the ADA, and we do not examine any such claim. *Cf. EEOC v. Amego*, 110 F.3d 135, 142–44 (1st Cir. 1997). We take the case as Lessard has framed it: the question presented is whether OSI perceived him to be disabled within the meaning of the ADA and discriminated against him on that account.

The statutory definition of disability contained in the ADA includes, with respect to an individual:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment, or;

(C) being regarded as having such an impairment.

disability. I have not been able to stop thinking about this since the day I was escorted out

42 U.S.C. § 12102(2). It is paragraph (C) of the definition which is at issue here.

In encompassing the category of perceived disability, the ADA follows the model adopted in § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794. The Supreme Court interpreted the similar prong of § 504 in *School Board of Nassau County v. Arline*, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987). In *Arline*, a case involving tuberculosis, the Court found that, by enacting this branch of the definition of "handicapped individual" under § 504:

Congress acknowledged that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment.

*Id.* at 284–85. This court also acknowledged these Congressional concerns in *Cook v. Rhode Island*, 10 F.3d 17, 24 (1st Cir.1993), a case under § 504 concerning, inter alia, perceptions that morbid obesity disqualified plaintiff from a broad range of jobs and several major life activities.

The EEOC, acting under its authority to promulgate regulations under the ADA, has said:

(l) *Is regarded as having such an impairment* means:

(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(3) Has none of the impairments defined in paragraph (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

of the plant."

29 C.F.R. § 1630.2 (1998). We consider here only clauses (1) and (3).[4] Those clauses shift the analysis somewhat, from what people at OSI may have perceived to how OSI "treated" Lessard's supposed impairment. We have previously explored the EEOC regulations in *Tardie v. Rehabilitation Hospital*, 168 F.3d 538, 541–42 (1st Cir.1999) and *Katz v. City Metal Co.*, 87 F.3d 26, 31–32 (1st Cir.1996).

▇▇▇ To recover under the ADA for employment discrimination, Lessard must prove three elements. He must establish that (1) he suffers from a disability as defined by the ADA (in this instance, that the employer regarded him as being disabled) but that (2) he was nevertheless qualified[5] for the job—that is, able to perform its essential functions either with or without reasonable accommodation—and, finally, that (3) OSI discharged him, in whole or in part, because of his protected disability. *See Feliciano v. Rhode Island*, 160 F.3d 780, 784 (1st Cir.1998) (citing *Katz*, 87 F.3d at 30). The burden of proof on all three prongs in this circuit is on plaintiff. *See Tardie*, 168 F.3d at 541; *Katz*, 87 F.3d at 30; *Cook*, 10 F.3d at 22. The district court examined the first prong, and found that Lessard had failed to carry his burden. *See Lessard*, slip op. at 12. Like the district court, we begin our inquiry with the threshold question: whether OSI regarded Lessard as disabled under the ADA, thus entitling him to the statute's protection. *See* 42 U.S.C. §§ 12102(2)(A), (C).[6]

▇▇▇ Under the ADA, not all impairments lead to protection. *Soileau*, 105 F.3d at 14–15. Only those impairments which substantially limit a major life activi-

ty do so. The only major life activity argued to be involved here is "working." 29 C.F.R. § 1630.2(i). Thus, this case does not involve any other major life activity, nor does it involve any evidence that Lessard was unable generally to work. "Working" itself is a somewhat elastic term and the EEOC has attempted to give it content through regulations.[7]

As Lessard, creditably, has noted to us, the regulations draw a distinction between an inability to perform "a class of jobs or a broad range of jobs," which provides the basis for a disability finding, and an "inability to perform a single, particular job," which does not. 29 C.F.R. § 1630.2(j)(3)(i). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.* The reason for this distinction ties back to the notion that there is no disability unless the major life activity of working is impaired. And all of these refinements are in the service, in this case, of deciding whether OSI treated Lessard as it did because of a perceived disability.

In the end, through the various iterations of Lessard's arguments, this case turns on the distinction drawn above. The district court found it undisputed that the Mount Department job—from which Lessard was sent home—was a single, specific job, and so entered summary judgment. Lessard responds that the evidence more fairly supports the inference that OSI acted as it did not because it thought him unable to do not merely the Mount Department job, but a "class of jobs or broad

---

4. Lessard briefly contends that myths, fears and stereotypes about scars informed OSI's actions, arguably making a claim under clause (2). That contention is dealt with later in the opinion.

5. OSI also defends on the basis that Lessard has not shown he is qualified to do the Mount Department work—that his hand wounds in fact mean he cannot do the job. We do not reach this argument.

6. Lessard could, of course, be both disabled and perceived to be disabled. *Cf. Katz*, 87 F.3d at 33. He does not so contend.

7. Here, we have no need to go deeply into the regulatory definition of "substantially limits," or the various factors which are relevant to this determination. 29 C.F.R. § 1630.2(j).

range of jobs," i.e., all repetitive motion jobs anywhere.

Under the regulations relied on by Lessard, an employee is substantially limited as to working if he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Id.; see also Quint v. A.E. Staley Mfg. Co.,* 172 F.3d 1, 5–6 (1st Cir. 1999).

There is no real disagreement between the parties that the Mount Department job is a narrow, single job.[8] Thus, if OSI concluded that Lessard was unable to perform the Mount Department job and treated him accordingly, its actions may not be attacked under the ADA. That is because only one job or a narrow range of jobs is involved, and therefore there can be no impairment of the major life activity of working. .

In this interpretation of the regulation, we follow this court's recent decision in *Tardie,* affirming summary judgment for an employer on a perceived disability claim. *Tardie* held:

> [T]he fact that appellees may have regarded Tardie as unable to work more than 40 hours per week, and thereby unable to perform her particular job, does not mean that appellees regarded her as being substantially limited in the major life activity of working. "An impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one."

*Tardie,* 168 F.3d at 542 (quoting *Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 723 (2d Cir.1994)).

Lessard insists that it can be reasonably inferred from the evidence that OSI found him unable to perform any repetitive motion work. He further argues that repetitive motion work includes a broad range of jobs. Thus, Lessard concludes, OSI's decision to terminate him did involve the major life activity of working and so was actionable. We think such inferences are not reasonable given the undisputed record, in particular the facts that the only OSI jobs available at the time were the Mount Department jobs, that OSI went to Kelly to fill Mount Department jobs, that Kelly retained Lessard to fill a Mount Department job, that Lessard's questions to the safety counselor and the nurse went to the safety of the Mount Department job for his hand, that the only job Lessard performed was the Mount Department job, that it was the Mount Department job from which he was sent home, and that Lessard reported to Kelly that the nurse told him he should do something other than mounting. *Cf. DM Research, Inc. v. College of American Pathologists,* 170 F.3d 53, 56 (1st Cir.1999) (inferences plaintiff sought to have drawn were not reasonable). It is true that the Mount Department work involved repetitive motion; but this does not mean that OSI treated Lessard as unable to perform a broad range of jobs when it treated him as unable to perform the specific Mount Department job.

The district court correctly concluded that the evidence presented was that the various OSI witnesses regarded Lessard as unsuitable for the Mount Department job, which is a specific job and not a class of jobs. There is also no evidence that at the time OSI needed workers outside the Mount Department. Because Lessard's evidence did not show that his ability to work in anything other than a specific job was ever questioned by OSI, summary judgment was appropriately entered against him on the basis of his failure to show perceived disability.

Lessard appears to argue that OSI considered him unable to do other repetitive motion production line jobs within the

---

8. From the record it appears that all the work in the Mount Department was basically the same.

plant, but submits no evidence that there were such jobs or that any such jobs had openings at the time. Lessard bore the burden of proof. Even if OSI regarded Lessard as precluded from other repetitive motion production line work within OSI but outside the Mount Department (if such work' existed), it is questionable whether this will be enough to show a substantially limiting impairment, a question we do not reach. *Cf. McKay v. Toyota Motor Mfg., U.S.A., Inc.,* 110 F.3d 369, 373 (6th Cir.), *mot. for untimely cert. denied,* —— U.S. ——, 118 S.Ct. 39, 139 L.Ed.2d 7 (1997); *Wooten v. Farmland Foods,* 58 F.3d 382, 386 (8th Cir.1995).

Lessard attempts to avoid this conclusion by saying the employer regarded him as unsuitable for *any* work anywhere involving repetitive hand motions, including jobs such as cooking and painting. The evidence does not support such an inference, and thus we do not examine whether such a belief involves a broad class of jobs, and thus a belief that the major life activity of working is impaired. *See DePaoli v. Abbott Labs.,* 140 F.3d 668, 672–74 (7th Cir.1998). It suffices to observe that these can be very fact-driven inquiries; that the EEOC has defined certain categories of information as helpful to defining what are "broad classes" of jobs, 29 C.F.R. § 1630.2(j)(3)(ii); *see also Quint,* 172 F.3d at 11 and that this record is devoid of any such evidence.

■ Lessard's final argument is that OSI was motivated by stereotyping, the very evil Congress intended the ADA to prevent. *Cf.* 29 C.F.R. § 1630.2(*l*)(2). He points to his scarred hand, saying it led to unwarranted assumptions by OSI that he was injury-prone and would thus drive up insurance costs. We are doubtful, despite suggestions to the contrary in some commentary, *see, e.g.,* R.L. Burgdorf, Jr., Dis-

ability Discrimination in Employment Law 162–63 (1996), that even myth-motivated actions by the employer can be the basis for liability if the actions are based on a perceived impairment that does not substantially limit a major life activity. Lessard's argument thus may well be beside the mark. To put it differently, on the claims raised by these facts, there is no reason to think that Congress intended the scope of protection afforded against *perceived* disability discrimination to be larger than the scope of protection afforded against *actual* disability discrimination. The EEOC regulations treat the scope of protection as no greater; if an impairment is not a disability for actual disability purposes, it is also not a disability for perceived disability purposes. *See* 29 C.F.R. § 1630.2(i).

■ But Lessard's argument, in any event, is not reasonably supported by inferences from the evidence. OSI and those who trained Lessard were well aware of his scarred hand and it mattered not, at least not until he raised his own fears that the mounting job might harm his hand. It was not stereotyping which set the chain of events in motion. And because a deeply offended Lessard never contacted the OSI Human Resources Department about a broader range of jobs, at the time of his dismissal or later, the record is barren as to how OSI would have responded. Regrettably, further communication by either side—which might have avoided this lawsuit—did not take place.[9]

*Affirmed.*

---

9. In the context of "reasonable accommodation" and as to "known disabilities," employers are encouraged to engage in an "interactive process" with the individual. *See Katz,* 87 F.3d at 33; *Grenier v. Cyanamid Plastics, Inc.,* 70 F.3d 667, 677 (1st Cir.1995) (citing 29 C.F.R. Pt. 1630, App. to § 1630.9). That provision is not in play here, because there was no known disability and because Lessard has not sought accommodation. That the law

did not require an interactive process does        not mean it would not have been worthwhile.