Carl JEWELL, Plaintiff,

v.

REID'S CONFECTIONARY COMPANY, Defendant.

No. CIV. 01–119–B–S.

United States District Court, D. Maine.

Nov. 21, 2001.

Mark K. McDonough, Esq., Cuddy & Lanham, Bangor, for Carl Jewell, plaintiffs.

Frederick B. Finberg, Bennett, Bennett & Troiano, P.A., Portland, for Reids Confectionery Company, defendants.

## ORDER

SINGAL, District Judge.

Defendant moved to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion.

## I. STANDARD OF REVIEW

The Court will dismiss a complaint only if it appears that the plaintiff cannot recover on any viable theory. *See, e.g., Black-stone Realty LLC v. F.D.I.C.,* 244 F.3d 193, 197 (1st Cir.2001). In making that determination, the Court accepts as true a plaintiff's well-pleaded factual averments and draws all reasonable inferences in the plaintiff's favor. *See, e.g., Bessette v. Avco Fin. Servs., Inc.,* 230 F.3d 439, 443 (1st Cir.2000). However, the Court need not accept legal conclusions that do not reasonably follow from the specific facts alleged. *See Cardente v. Fleet Bank of Maine, Inc.,* 796 F.Supp. 603, 606 (D.Me. 1992).

Applying these standards, the Court adopts the following facts as true.

## II. BACKGROUND

Carl Jewell began working for Reid's Confectionary Company as a delivery driver in 1994. On August 21, 1999, Jewell suffered a heart attack and ceased working at Reid's. On September 3, 1999, he endured a second attack, prompting doctors to implant a defibrillator in his chest. As a result of the implantation of the defibrillator, the State of Maine suspended his driver's license until February 2000.

Jewell spoke with Richard Vaillancourt, his supervisor at Reid's, on several occasions during his ensuing two-month convalescence. In each conversation, Jewell assured Vaillancourt that he intended to return to work at Reid's as soon as possible, and that he wanted Reid's to keep his position open. Vaillancourt responded that when Jewell was capable of returning, his employer would "find some work for him to do." (Pl. Compl. at ¶ 13 (Docket # 1).)

Jewell's doctor cleared him to return to work on November 8, 1999. The clearance covered all of Jewell's job activities except for driving, which was still prohibited due to the license suspension. Jewell immediately asked Vaillancourt if he could come back to work, but was told that Reid's had

hired someone to replace him the day before and no work was available.

Nevertheless, after giving Jewell this news Vaillancourt contacted Jewell's doctor to inquire about Jewell's ability to handle the stresses and strains of his former delivery job. The doctor responded that Jewell was in excellent health and could meet all of the *physical* requirements of his former position (even though he could not legally perform the job's central function—driving). Vaillancourt persisted, questioning whether the electromagnetic fields generated by the machinery at Reid's facility would be a danger to Jewell's defibrillator in "any job" at the company. (Pl. Compl. at ¶ 16.) The doctor did not know the answer, and told Vaillancourt that he would have to get back to him. While waiting for the doctor's reply, Vaillancourt again told Jewell that Reid's "had nothing for him," effectively terminating his employment. (Pl. Compl. at ¶ 15.) Two weeks later, the doctor sent Vaillancourt a letter assuring him that electromagnetic fields would not threaten Jewell's health. Despite this information, Reid's never offered Jewell another job, even though he wanted one and was physically fit to work.

On or about April 25, 2000, Jewell filed a complaint with the Equal Opportunity Employment Commission and the Maine Human Rights Commission alleging that Reid's had discriminated against him on the basis of disability. He obtained "right to sue" letters from both agencies, and the instant case ensued on June 14, 2001. Jewell's Complaint alleges four causes of action: (1) a claim of discrimination pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (the "ADA" or the "Act"); (2) a claim pursuant to the Maine Human Rights Act, 5 M.R.S.A. § 4572 (the "MHRA"), mirroring the ADA claim; (3) a claim pursuant to the federal Family and Medical Leave Act, 29 U.S.C.

§ 2615; and (4) a claim pursuant to the Maine Family and Medical Leave Act, 26 M.R.S.A. §§ 843–848. Jewell requests relief in the form of an injunction against Reid's to prevent it from further discriminating against its employees on the basis of physical or mental impairment, back pay, reinstatement or front pay, compensatory and punitive damages and costs.

On August 13, 2001, Reid's filed a Motion to Dismiss pursuant to Rule 12(b)(6), challenging Jewell's ADA and MHRA claims on three theories: (1) that Jewell was not a "qualified individual with a disability" within the meaning of the acts because he did not possess a driver's license at the time he asked Reid's to reinstate him in his former position; (2) that Jewell was not entitled to the reasonable accommodation of reassignment to an alternate position at Reid's because he did not allege that he was *actually* physically or mentally disabled; and (3) that Jewell failed to allege that there were vacant jobs available to which he could have been reassigned. Reid's also challenges Jewell's federal Family and Medical Leave Act claim, on the theory that Jewell was not qualified to return to his job when he sought reinstatement. Finally, Reid's challenges the Maine Family and Medical Leave Act claim on the basis that it was time-barred. The Court addresses each of Reid's objections below.

## III. DISCUSSION

### A. Plaintiff's ADA Claims

To state a claim for violation of the ADA, a plaintiff must allege (1) that he is disabled within the meaning of the Act; (2) that he could nevertheless perform the job he held or desired with or without reasonable accommodation; and (3) that his employer took adverse employment action against him, in whole or in part, because of his disability. *See, e.g., Lessard v. Osram*

*Sylvania, Inc.,* 175 F.3d 193, 197 (1st Cir. 1999). Defendant's objections primarily concern the second of these elements. However, to adequately discuss the arguments, it is necessary first to explore Plaintiff's allegations of disability.

### 1. Category of Disability

To state a claim for violation of the ADA, a plaintiff must first allege that he is disabled within the meaning of the Act. *See Lessard,* 175 F.3d at 197. A person may be disabled within the meaning of the ADA in one of three ways: a physical or mental impairment substantially limits him in the exercise of a major life activity; he has a *record* of substantial impairment; or he is *regarded as* having a substantial impairment. 42 U.S.C. § 12102(2) (emphasis added). Major life activities are those that are basic to human existence and interaction, such as walking, talking, hearing, seeing and working.[1] 29 C.F.R. § 1630.2(i). The Court determines if impairment is substantially limiting by analyzing the nature and severity of the impairment; its duration or expected duration; and its permanent or long-term impact. 29 C.F.R. § 1630.2(j)(2).

■ Plaintiff alleges that he is disabled under all three definitions of disability. However, the facts he has pleaded make it clear that his incapacity cannot logically fit within two of the three definitions. First, Plaintiff alleges that "his physical impairment of coronary artery disease and the implantation of a defibrillator" substantially limit him in one or more of his major life activities; i.e. that he is *actually* physically disabled. (Pl. Compl. at ¶ 25.) The Complaint does not specify which major life activities Plaintiff's condition limits, however. Quite the opposite, Plaintiff asserts that his doctor gave him a clean bill of health and that he was physically (although not legally) capable of all of the functions of the job he held. The Court cannot resolve this apparent contradiction. It is simply unreasonable to infer from Plaintiff's pleaded facts that his legal conclusion (that he was substantially limited in a major life activity) is accurate.[2]

■ It is no argument that, despite Plaintiff's allegations of good health, a heart condition is a per se physical disability. In *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), the Supreme Court made clear that courts must make an "individualized inquiry" into alleged physical disabilities. *Id.* at 483–84. The corrective measures that a person has taken to mitigate incapacity are relevant to this inquiry. *Id.* at 482. Therefore, what is a substantially limiting physical incapacity for one person may not be for another. *Compare Hilburn v. Murata Elecs. N. Am.,* 17 F.Supp.2d 1377, 1381 (N.D.Ga.1998), *aff'd,* 181 F.3d 1220 (11th Cir.1999) (applying individualized assessment and finding that plaintiff's myocardial infarction did not substantially limit a major life activity); *with Weissman v. Dawn Joy Fashions, Inc.,* 214 F.3d 224, 233 (2nd Cir.2000) (finding heart attack *did* substantially limit major life activity.) Because Plaintiff al-

---

**1.** The Court notes, despite the regulatory language, its discomfort with the concept that "working" can be regarded as a major life activity. *See Sutton,* 527 U.S. at 471, 119 S.Ct. 2139, infra.; *Gelabert–Ladenheim v. Am. Airlines, Inc.,* 252 F.3d 54, 58–59 (1st Cir. 2001). At a minimum, the First Circuit appears to disagree with the EEOC about the criteria for finding that one is substantially limited in one's ability to work. *Compare*

*Gelabert–Ladenheim,* 252 F.3d at 58–59, *with* 29 C.F.R. § 1630.2(j) App. § 1630.2(j).

**2.** In his submissions to the Court in opposition to Defendant's Motion to Dismiss, Plaintiff appears to back away from this allegation, relying instead upon his employer's perception of his capabilities as the defining feature of his disability.

leges that he fully recovered from his heart attacks with the help of an internal defibrillator, the Court rejects his claim that his heart condition was substantially limiting and that he was actually disabled.

██ Second, Plaintiff alleges that he has a record of substantial limitation in a major life activity. Again, Plaintiff's pleaded facts undermine his claim. The "record of impairment" category of disability refers to plaintiffs who have a history of, or have been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities. *See* 29 C.F.R. § 1630.2(k). Plaintiff alleges his condition arose less than three months before Defendant terminated his employment, and that he has enjoyed a swift and full recovery. It tortures the phrase "history of substantial limitation" to suggest Plaintiff's admittedly brief incapacitation, marked by mitigating measures, places him within the "record of impairment" category of disability. *See, e.g., Sorensen v. Univ. of Utah Hosp.,* 194 F.3d 1084, 1087 (10th Cir.1999) (fact that plaintiff could not perform any life activities during brief— five day—hospitalization did not constitute record of substantial impairment); 29 C.F.R. § 1630, App. § 1630.2(j) (eight week recovery from broken leg is an impairment of "brief" duration).

██ Plaintiff alleges finally that his employer terminated his employment and failed to offer him an alternate one because it *regarded* him as disabled. This third category of disability renders a person "disabled" within the meaning of the Act so long as he is perceived as being substantially limited, even if he has only a partially limiting impairment, or no impairment at all. *See* 29 C.F.R. 1630.2(*l*) App. § 1630.2(*l*). Plaintiff has stated sufficient facts to support the inference that his employer did not believe that he could perform a wide range of jobs because of his heart condition; that is, that he was sub-

stantially limited in the major life activity of working. Therefore, Plaintiff has pleaded adequately that he is disabled under the third category of disability.

### 2. Qualified Individual with a Disability

The second element of an employment discrimination claim under the ADA is an allegation that the plaintiff is a "qualified individual with a disability." *Lessard,* 175 F.3d at 197. A qualified individual with a disability is one who can perform all of the essential functions of the job he wants or desires with or without reasonable accommodation. 42 U.S.C. § 12111(8). Among other things, "reasonable accommodation" refers to modifications or adjustments in the workplace, as well as job restructuring and reassignment to a vacant position. *Id.* at § 12111(9).

Defendant argues that Plaintiff failed to demonstrate that he is a qualified individual with a disability because, even assuming he is disabled within the meaning of the ADA, he was not qualified to perform his job at the time he asked to come back to work. This is partially true. Plaintiff was not qualified to be a delivery driver, since he did not possess a valid driver's license as of mid-November 2000. *See, e.g., Bay v. Cassens Transp. Co.,* 212 F.3d 969 (7th Cir.2000); *Randall v. Port of Portland,* 21 F.Supp.2d 1225 (D.Or.1998).

██ This deficiency did not automatically render Plaintiff unqualified within the meaning of the statute, however. Even if Plaintiff was no longer qualified for the job he held previously, the ADA considers a person to be a "qualified individual with a disability" if he can perform the essential functions of the job he either holds *or desires.* *Id.* at § 12111(8). The term "or desires" refers to jobs to which a person with a disability could be reassigned. *See Smith v. Midland Brake, Inc.,* 180 F.3d 1154, 1161 (10th Cir.1999). Thus, to satis-

factorily allege that he is a qualified individual with a disability, Plaintiff need only allege that he was qualified to do other jobs in the company to which he could have been reassigned. *See, e.g., Feliciano v. Rhode Island,* 160 F.3d 780, 786 (1st Cir.1998) (holding that a Plaintiff could establish her "qualified individual" status by showing that she was qualified for other vacant positions at hospital, even though she was not qualified for job she held formerly); *Smith,* 180 F.3d at 1159 ("an employee can be a 'qualified individual with a disability' when that employee is unable to perform the essential functions of his or her present job, regardless of the accommodation offered, but could perform the essential functions of other available jobs within the company...."). Plaintiff has successfully done so.

Defendant counters that Plaintiff was not entitled to reassignment as a form of reasonable accommodation, so it is irrelevant that Plaintiff was qualified for another position in the company. According to Defendant, the right to reasonable accommodation only flows to those who are *actually* disabled, and not to individuals who are merely *regarded as* being disabled. This theory finds some support in circuits other than our own. In *Weber v. Strippit, Inc.,* 186 F.3d 907 (8th Cir.1999), *cert. den.* 528 U.S. 1078, 120 S.Ct. 794, 145 L.Ed.2d 670 (2000), the Eighth Circuit ruled that an employer has no duty to reasonably accommodate employees whom it perceives to be disabled. *See id.* at 916–17. *See also Newberry v. East Tex. State Univ.,* 161 F.3d 276, 280 (5th Cir.1998) ("an employer need not provide reasonable accommodation to an employee who does not suffer from a substantially limiting impairment merely because the employer thinks the employee has such an impairment"); *Fontanilla v. City and County of San Francisco,* Docket No. C–96–3916 JCS, 2001 WL 513395, at *15 (N.D.Cal. Feb.28, 2001) (concluding that the ADA and its implementing regulations, taken as a whole, require only that employers accommodate actual disabilities). The *Weber* court reasoned that in writing the ADA, Congress could not have intended for similarly situated, non-disabled workers to be treated differently merely on the basis of their employer's misconception of their capabilities. *Id.* at 917. It would be unfair, according to *Weber,* for the non-disabled employee fortunate enough to be mistakenly regarded as disabled to receive an unnecessary accommodation, while the non-disabled employee who is correctly perceived as being non-disabled receives nothing. *Id.* at 916–17. Moreover, the *Weber* court argues, it would be "bizarre" to require an unnecessary accommodation from the employer. *Id.* at 916.

■ The Court rejects Defendant's argument for two reasons. First, the First Circuit has ruled that an employee may maintain a cause of action for failure to reasonably accommodate a perceived disability. In *Katz v. City Metal Co.,* 87 F.3d 26 (1st Cir.1996), a plaintiff sued his employer for failing to grant him the reasonable accommodation of a reduced work schedule after the plaintiff suffered a heart attack. When the plaintiff failed to establish an *actual* physical disability at trial, but successfully established that his employer perceived him as disabled, the district court granted judgment as a matter of law to the defendant. *Id.* at 28. The First Circuit reversed, holding that the plaintiff could reach the jury on the theory of failure to reasonably accommodate a perceived disability alone. *Id.* at 32–34. Although the court in *Katz* did not engage in a substantive analysis of the legislation and case law, as the *Weber* court did, the Court is bound by the higher court's ruling.

Second and moreover, the Court cannot agree with *Weber* that the disparity in

treatment between non-disabled employees whom an employer perceives as disabled, and those whom it does not perceive as disabled, is of sufficient concern to foreclose Plaintiff's claim. *Katz* reminded the courts that "with respect to [disabilities an employer knows about or perceives] ... the emphasis is on encouraging the employer to engage in an interactive process with the [employee] to determine effective reasonable accommodation." *Katz*, 87 F.3d at 33 (citing *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 677 (1st Cir. 1995)) (internal quotations omitted). If an employer fails to explore an employee's need for a reasonable accommodation when the employer wrongly regards the employee as being disabled, opting instead to take adverse action against the employee, it is hardly a "bizarre" result to hold the employer accountable. Indeed, the purpose of the ADA was, in part, to punish employers for making just this sort of "stereotypic [assumption] not truly indicative of the individual ability" of their employees. 42 U.S.C. § 12101(7). Accordingly, it is proper for Plaintiff to claim he is a qualified individual with a disability, even though his disability was his employer's misperception of his job capabilities.

█ Finally, Defendant argues that even assuming it is proper to consider other jobs to which Plaintiff could be reassigned, Plaintiff's argument still fails because he has not explicitly stated that reassignment jobs were available at Reid's. While it is true that at the summary judgment or trial stage, Plaintiff would bear the burden of proving the existence of jobs available for reassignment, *see Feliciano*, 160 F.3d at 786, at this stage of the case the Court indulges in reasonable inferences on Plaintiff's behalf. It is not unreasonable to infer from Vaillancourt's statement that Defendant would "find" a job for Plaintiff when he recovered from his surgery, and Vaillancourt's questions to Plaintiff's doctor about Plaintiff's ability to per-

form "any job" at the company, that there were indeed vacant positions open in the company to which Plaintiff could have been reassigned. (Pl. Compl. at ¶ 13, 16.) Therefore, Plaintiff has successfully stated a claim that he is a qualified individual with a disability.

3. Adverse Action Because of Disability

█ Third and finally, a plaintiff in an ADA action must allege that his employer took adverse employment action against him, in whole or in part, because of his disability. *Lessard*, 175 F.3d at 197. Plaintiff has done so here by stating that Defendant terminated his employment and did not offer him reassignment. Therefore, the Court finds that Plaintiff has stated a claim of employment discrimination pursuant to the ADA, on the theory that his employer failed to reasonably accommodate his perceived disability.

B. Plaintiff's MHRA Claims

The Court does not distinguish between the ADA and MHRA as to their scope or general intent, nor do the parties argue that it should. *See Soileau v. Guilford of Maine, Inc.*, 928 F.Supp. 37, 44–45 (D.Me. 1996), *aff'd* 105 F.3d 12 (1st Cir.1997). Therefore, the Court finds that Plaintiff has also adequately stated a claim of employment discrimination pursuant to the MHRA.

C. Plaintiff's Federal FMLA Claim

█ Plaintiff also asserts a cause of action under the federal Family and Medical Leave Act, 29 U.S.C. § 2615 (the "FMLA"). Under the FMLA, an employee. is entitled to a total of twelve workweeks of leave during any twelve-month period for a serious health condition that makes the employee unable to perform the functions of his position. *See* 29 U.S.C.

§ 2612(a)(1)(D). The employee is further entitled to reinstatement to his position or an equivalent position upon return from leave. *See* 29 U.S.C. § 2614(1). However, the regulations promulgated under the FMLA make clear that an employee who is unable to perform an essential function of his position because of a physical or mental condition loses his right to reinstatement. *See* 29 C.F.R. § 825.214(b).

Defendant argues that Plaintiff cannot state a claim under the FMLA because he did not possess a driver's license at the time he sought reinstatement, and was therefore unable to perform an essential function of his delivery job. Plaintiff presents two arguments in response. First, he argues that but for his suspended license, he was physically fit to perform the essential function of driving, and therefore should not have been denied reinstatement under section 825.214(b). Second, he argues that, regardless of his license suspension, section 825.215(b) of the regulations required Defendant to afford him a "reasonable opportunity" to regain his license when he sought reinstatement. 29 C.F.R. § 825.215(b).

■■■■■ Plaintiff's first argument is without merit. At the time he sought reinstatement, Plaintiff could not perform the essential job function of driving, because his driver's license had been suspended for health reasons. That he was physically capable of driving is irrelevant. One who is not qualified for a job cannot be deemed capable of performing its essential functions. *See, e.g., Bay,* 212 F.3d at 974. Moreover, unlike the ADA, the FMLA does not contain a reasonable accommodation element. *See Tardie v. Rehabilitation Hosp. of Rhode Island,* 168 F.3d 538, 544 (1st Cir.1999). Thus, under the FMLA, an employer need not assess an employee's qualification to perform an-

other job to which he could be reassigned as a reasonable accommodation. *See also* 29 C.F.R. § 825.214(b) (noting that even if a plaintiff's cause of action is foreclosed under the FMLA because he cannot perform the essential functions of his job, he may still have a remedy against his employer under the ADA).

■■■■ Plaintiff's second argument, that he was due a reasonable opportunity to regain his license, is similarly at odds with the regulatory language. Section 825.215(b) of the FMLA regulations states:

> If an employee is no longer qualified for the position because of the employee's inability to attend a necessary course, renew a license, fly a minimum number of hours, etc., as a result of the leave, the employee shall be given a reasonable opportunity to fulfill those conditions upon return to work.

29 C.F.R. 825.215(b). Plaintiff insists this language essentially entitles an employee to an ADA-style accommodation in the event he cannot fulfill the essential functions of the job he held before he took leave. However, a close reading reveals that the section only applies if the license was lost *"as a result of the leave."* 29 C.F.R. § 825.215(b) (emphasis added). In other words, it provides an opportunity for an employee to recertify himself for a position if his absence from work *caused* his loss of certification. *See, e.g., Fejes v. Gilpin Ventures, Inc.,* 960 F.Supp. 1487 (D.Colo.1997) (gaming license expired during leave of absence).

The regulation does not refer to a situation like this one, in which the loss of a license is a direct result of the employee's illness, rather than a collateral result of his absence from work.[3] Here, Plaintiff alleges that his heart attack, not his leave of

---

**3.** Even if it did, the Court doubts whether it would be "reasonable" to require an employ-

er to wait three months for Plaintiff to recover his license.

absence, was the cause of his suspended license. Indeed, it is central to Plaintiff's argument that the duration of his suspension was unrelated to his course of recovery. Because he would not have been able to regain the license, or prevent its loss, by reducing the time he spent on leave, Plaintiff is not entitled to a "reasonable opportunity" to regain it pursuant to the regulations.

### D. Plaintiff's Maine FMLA Claim

 Plaintiff's final claim is for violation of the Maine Family and Medical Leave Act, 26 M.R.S.A. § 843–48 (the "MFMLA"). Pursuant to the MFMLA, an employee is entitled to ten consecutive workweeks of leave from his job for a serious health condition. *See id.* at § 844. Plaintiff alleges that he did not seek reinstatement to his job until November 8, 1999, more than eleven consecutive workweeks after his August 21, 1999, heart attack. Therefore, his claim under the MFMLA must fail.

### IV. CONCLUSION

For the reasons stated above, the Court DENIES Defendant's Motion to Dismiss Plaintiff's claims pursuant to the ADA and the MHRA. The Court GRANTS Defendant's Motion as to Plaintiff's federal and state Family and Medical Leave Act claims, and DISMISSES them WITHOUT PREJUDICE.

SO ORDERED.