Janice **SOLER–ROMAN** Joseph **Foster– Levine and their conjugal partnership Plaintiffs**

v.

**HOSPITAL SAN PABLO, INC. Jorge Matta Hospital Administrator and ABC Insurance Co. Defendants**

**No. CIV. 99–2163CCC.**

United States District Court, D. Puerto Rico.

March 28, 2002.

**222**

A.X. Viera–Vargas, San Juan, PR, Godwin Aldarondo–Girald, San Juan, PR, for Plaintiffs.

P.J. Manzano–Yates, San Juan, PR, for Defendants.

## OPINION AND ORDER

CEREZO, District Judge.

This is an action under the American with Disabilities Act (ADA), 42 U.S.C. 12101 *et. seq.*, in which plaintiff Janice Soler–Román (Soler) claims to have been terminated from her employment as a registered nurse at defendant Hospital San Pablo Inc. (San Pablo) after she was regarded as being disabled. Her husband, Joseph Foster–Levine, and their conjugal partnership joined her as plaintiffs. Supplemental claims under Puerto Rico's Acts No. 80 of May 30, 1976, 29 L.P.R.A. 185a, No. 44 of July 2, 1985, 1 L.P.R.A. § 501 *et. seq.*, and No. 45 of April 18, 1935, 11 L.P.R.A. § 7 were also asserted. Before the Court now are San Pablo's Motion for Summary Judgment (docket entry 21), plaintiffs' opposition (docket entry 28), and defendant's reply (docket entry 43).

The relevant facts follow: Soler–Román began to work as a registered nurse in San Pablo's pediatrics ward on June 18, 1990. On June 10, 1996, she suffered a work-related accident for which she was treated at the State Insurance Fund ("SIF") and treatment was ordered while resting until September 1996. The SIF authorized Soler to continue her treatment while working until April 22, 1998, when it again ordered her to receive treatment while resting.

As part of the treatment for the 1996 accident, Soler underwent certain medical tests which included a test for arterial blood gases. On April 22, 1998, she attended a private laboratory to extract the specimen for the blood gas test. During this procedure, Soler–Román suffered another accident which consisted of a punctured nerve in her left hand. As a result of this second accident she was diagnosed with "neuritis left wrist." This second accident, according to the available medical evidence, rendered plaintiff unable to lift more than 5 pounds with her left hand.

On September 9, 1998, the SIF again allowed Soler to continue her treatment while working, beginning on September 10. Soler–Román reported back to work and informed her supervisor that she had a weight lifting restriction of not more than 5 pounds with her left hand. In view of this lifting restriction—based on Soler–Román's representations—the supervisor requested an investigation and a report from the State Insurance Fund. The SIF's re-

sponse was that Soler–Román could not lift more than 5 pounds with her left hand and recommended the possibility of reassigning her to another position. This restriction was later confirmed in a letter dated October 19, 1998 which the SIF rehabilitation expert sent to San Pablo, stating that Soler–Román suffered from a "neuritis" in her left wrist that reduced her weight lifting capabilities.

Based on the SIF's findings and recommendations, on October and November, 1998 Soler–Román requested a reasonable accommodation. Specifically, she asked to be reassigned with the same salary and benefits to another position in the hospital. Soler–Román claimed that as a reasonable accommodation, she could have been transferred to the laboratory, the nursery, the medical records department, or assigned duties as an epidemiologist. Acting on the SIF's findings and recommendations, San Pablo's Human Resources Manager, Begoña Meléndez, the Health and Occupational Safety Coordinator, Mr. Cosme Torres, the Benefits and Compensation Coordinator, Ms. Evelyn Pedrosa, and San Pablo's nursing Director, Ms. Iris Collazo, met in order to analyze her duties and reassignment possibilities.

The evidence shows that with regard to the laboratory position sought by Soler–Román, San Pablo explained to her that she did not have the academic requirements to perform as a laboratory or a medical technician. Furthermore, there were no openings in the laboratory and the only position plaintiff could have occupied was as a phlebotomist. However, said position did not meet her reasonable accommodation demands inasmuch as said position's salary was less than that of a registered nurse and she requested that her terms and conditions of employment remained intact as part of her request.

As to the position in the nursery, although San Pablo also considered plaintiff for the same, she did not posses the academic requirements (one year cardiovascular intensive course) for the position.

As for the medical records technician (which requires a registered nurse academic requirement), it is not disputed that San Pablo similarly considered Soler for the position. However, there were no vacancies available since months previous to Soler–Román's return to work authorization by the SIF San Pablo closed down its family medicine section and filled all of the vacancies for medical record technicians with the registered nurses of said section.

Finally, as for Soler–Román's epidemiologist request, it is also undisputed that she did not posses the academic requirements for that position inasmuch as a master degree was required. Moreover, there were no openings for said position.

Soler–Román has not proffered any evidence that San Pablo had any vacancies where she could have been relocated. Her only contention is that, although she requested a reasonable accommodation on October and November, 1998, she could perform as a registered nurse with her 5 pound weight lifting limitation.

On December 29, 1998, Soler–Román met with Mrs. Begoña Meléndez, San Pablo's Director of Human Resources, to discuss her situation. During the meeting, Soler–Román restated that the SIF believed that she was able to work with the 5 pound limitation on her left hand. Mrs. Iris Collazo explained that there were no positions available in the nursing department where she could be reassigned due to her weight lifting limitations. Since the weight lifting limitations prevented her from carrying out the essential duties of a registered nurse, and there were no other positions available for Soler, she was noti-

fied of her termination on December 29, 1998.

Plaintiffs contend that Soler–Román's termination was based on San Pablo's erroneous perception that her lifting restrictions substantially limited her in one or more major life activities. Her theory of liability is anchored on the "regarded as" definition of disability set forth in 42 U.S.C. § 12102(2)(C). San Pablo requested summary judgment on the grounds that Soler–Román was unable to perform the essential duties of a registered nurse; that there were no positions available to transfer her as a reasonable accommodation and that she failed to prove the necessary elements to proceed under a "regarded as" disabled theory of liability.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability...." 42 U.S.C. § 12112(a); *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). The ADA also requires the employer to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual. *See* 42 U.S.C. § 1212(b)(3)-(4).

The ADA defines a "disability" as: (a) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment. 42 U.S.C. § 12102(2). ADA's protection only extends to individuals that meet one or more of the above mentioned definitions. *Sutton v. United Air Lines, supra; Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999); *Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998).

■ It follows that in order for Soler–Román to be considered a "qualified individual with a disability," she must qualify as disabled under any of the subsections of the ADA's definition of disability. A plain reading of the three subsections of the definition quickly reveals a common requirement: that the physical or mental impairment must substantially limit one or more of the individual's major life activities. As such, if a plaintiff relies on subsection (C) of the definition, she must prove that the employer regarded her as having an impairment that substantially limited one or more of the major life activities. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 490, 119 S.Ct. 2139, 2150, 144 L.Ed.2d 450, 467 (1999); *Lessard v. Osram Sylvania Inc.*, 175 F.3d 193, 199 (1st Cir. 1999) ("there is no reason to think that Congress intended the scope of protection afforded against *perceived* disability discrimination to be larger that the scope of protection afforded against *actual* disability discrimination"); see also *Toyota Motor v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 690, 151 L.Ed.2d 615 (2002) ("Merely having an impairment does not make one disabled for purposes of the ADA. Claimants must also demonstrate that the impairment limits a major life activity.") Common to all definitions of disability is the fact that the impairments in question must substantially limit a major life activity.

Soler–Román claims that she was not disabled and fully capable of performing her duties as a pediatric registered nurse, but that she was perceived by defendant's management to be a disabled person. After the close of discovery, Soler–Román's only proffered evidence concerning San Pablo's perception is that the Human Resources Manager and the Head of the Nursing Department at San Pablo considered she could not perform as a registered nurse in the pediatrics ward with a 5 pound weight lifting restriction.

■ In order to be substantially limited in the major life activity of working, an

individual must be precluded from more than one type of job, a specialized job, or a particular job of choice. *Murphy v. UPS*, 527 U.S. 516, 523, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999). This means that in order to be substantially limited in the major life activity of working, an individual must be unable to perform a class of jobs rather than only a particular job. *Id.*

Given the fact that plaintiffs' claim rests on the theory that San Pablo regarded her as disabled, the Court will analyze whether plaintiff has proffered sufficient evidence to meet the "regarded as" threshold of the ADA. The Court notes that Soler–Román does not claim that she was precluded from performing a wide range of jobs. Rather, plaintiff contends that San Pablo's "sole reason for [her] dismissal ... was their [sic] perception that plaintiff was unable to perform the duties of a registered nurse...." Plaintiffs' statement of uncontested facts, no. 33.

The implementing regulations define an individual who is regarded as having an impairment as one who:

(1) Has a physical or mental impairment that does not substantially limit life activities but is treated by a covered entity as constituting such limitation;

(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(3) Has none of the impairments defined in (h)(i) or (ii) of this section but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(1). *See also Cook v. State of R.I. Dept. of MHRH*, 10 F.3d 17 (1st Cir.1993).

Soler–Román argues that subsection (1) of the regulations is potentially applicable. Under this subsection, a jury may find that an individual who has an impairment that is not substantially limiting is nevertheless "disabled" if she is treated by the employer as having an impairment that does substantially limit major life activities. Under clause (1), the analysis is somewhat shifted, from what people at San Pablo may have perceived to how San Pablo treated Soler's supposed impairment. *Lessard, supra,* at 197.

The purpose of the ADA's "regarded as" coverage is to protect impaired individuals from discrimination on the part of employers who exclude such individuals because of the stereotypes, myths, and fears they hold of people who are so impaired. *See* 29 C.F.R. 1630.2(1).

■ The only major life activity involved in this case is "working." To be "regarded as having a disability," Soler–Román must be perceived and treated by San Pablo as "generally unable to work in either a class of jobs or a broad range of jobs in various classes as compared with the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). Even under the "perceived as" theory, "an impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one" *Tardie v. Rehabilitation Hospital*, 168 F.3d 538 at 542 (1st Cir.1999). The "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). Plaintiff carries the burden on this issue. *Santiago Clemente v. Executive Airlines*, 213 F.3d 25 (1st Cir. 2000).

■ The Court believes that the decision of the Court of Appeals for the First Circuit in *Lessard, supra,* disposes of Soler–Román's disability claims. Even if we were to infer that San Pablo regarded Soler–Román as unable to perform as a registered nurse, said perception pertained

solely to one type of job and not to the major life activity of working in general as the First Circuit has stated on *Lessard* and *Tardie, supra.*

Soler–Román has offered no evidence that San Pablo considered her substantially limited in her ability to work either for it or generally in a wide range of jobs. She admitted that, when reasonable accommodation was sought after the SIF's expert recommendation, San Pablo's Human Resources Manager considered her for several positions within (*e.g.* medical records technician, laboratory), and, even outside the organization (registered nurse for a local health insurance carrier "telemedicine" program). Such treatment by San Pablo defeats Soler's intention to fit the profile of the "regarded as" coverage. San Pablo's actions do not indicate that it considered Soler to be substantially limited in her ability to work. Plaintiffs' only evidence is that San Pablo believed that Soler–Román was unable to perform CPR in case of an emergency, carry objects or patients, inject medication and some functions of the position of registered nurse. That perception in and of itself does not establish that San Pablo treated Soler–Román as disabled in a wide spectrum of jobs. *See Soileau v. Guilford of Maine, Inc.,* 928 F.Supp. 37, 51 (D.Me.1996) (if employer considered employee incapable of performing certain functions, that alone would not be actionable under the ADA); *Goldsmith v. Jackson Memorial Hosp. Public Health,* 33 F.Supp.2d 1336, 1340–41 (S.D.Fla.1998) (record contained evidence that employer regarded plaintiff as incapable of performing one procedure rather than incapable of working in the profession and, thus, claim not actionable under the ADA).

Nothing suggests that San Pablo believed that Soler–Román's weight-lifting limitation precluded her from working a broad range of jobs. Plaintiffs have not disputed the fact that San Pablo would have placed Soler–Román as a Medical Record Technician or even as a registered nurse at another employer (Triple S). Plaintiffs' only proffered evidence is that San Pablo considered that Soler–Román could not perform certain tasks of the registered nurse position in the pediatric ward.

In light of the above, the Court GRANTS defendant's Motion for Summary Judgment (docket entry 21) and dismisses plaintiffs' ADA claim. The Court also declines to exercise supplemental jurisdiction over the Puerto Rico law claims which are dismissed without prejudice.

SO ORDERED.

### JUDGMENT

For the reasons stated in the Opinion and Order issued on this same date, it is ORDERED AND ADJUDGED that this action be DISMISSED.

SO ORDERED AND ADJUDGED.